# Attachment

**III. Statement of Claim**

This is a suit authorized and instituted pursuant to the Act of Congress known as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq., and pursuant to the Maryland state and common laws, specifically fraud in the inducement. I allege Defendant unlawfully discriminated against me on the basis of age, and gender, by not referring me for employment, by creating and furnishing to others defamatory data about me in retaliation for filing this case, and for fraudulently monetizing my data without my knowledge or consent. I never clicked "I Accept" to anything on either Defendants' websites, they fraudulently induced me to emailing them my resume data with no intention of getting me a job, they intentionally made misrepresentations to the EEOC about not using AI and machine learning tools, they monetized my data and shared/ sold it to hundreds of data brokers without my consent, and they unlawfully created and furnished data about me to others in retaliation for filing this complaint, which continues to prevent me from getting a full time job.

1. Plaintiff is a female, is over 40 years of age and was at all relevant times, and resides in Harford County, Maryland.

2. Defendant Major, Lindsey & Africa, LLC ("MLA") is a data broker/recruiter working in the employment industry, with a principal place of business located at 7317 Parkway Dr, Hanover, MD 21076[1].

3. Defendant Allegis Group, Inc. ("Allegis") is an international talent management firm headquartered at 7301 Parkway Dr., Hanover, Maryland (located next door to MLA). Allegis owns MLA and several other similar data broker/recruiters[2].

4. Defendants MLA and Allegis are data brokers that specialize in selling data about attorneys to businesses, and in creating and furnishing data profiles of candidates to be used in the hiring and employment process. Their focus is on attorneys, some of the highest-qualified and most expensive humans available on the job market today. They furnish and broker data in these "hidden profile" reports about legal professionals (these profiles/reports provide a fuller picture of the candidate, including much more data than traditional credit reports, but may be full of suspect information, inferences, and potentially unlawful information, as to the types of information disclosed about a candidate)[3].

---

[1] The Maryland Secretary of State shows another address for Defendant, 7320 Parkway Dr., but the EEOC charging documents used the 7313 Parkway Dr. address. https://egov.maryland.gov/BusinessExpress/EntitySearch/Business

[2] Allegis Group, Inc. is an international talent management firm headquartered in Hanover, Maryland, United States. As of 2018, it had US$13.4 billion in revenue, and 19,000 employees. It ranks fourth in the world after Adecco, Randstad and Manpower Inc. https://en.wikipedia.org/wiki/Allegis_Group

[3] A quick check of the MLAglobal website shows the many data-powered services they offer to sell to businesses, including, but not limited to, "strategic talent development", "Organizational design", "compliance obligations", "developing technology plans", "Helping existing, new or aspiring leaders develop skills, behavioral characteristics and leadership qualities by employing a variety of competency frameworks," and "Culture Consulting to attract and retain good talent" utilizing their "Smarter Law technology assessments". https://www.mlaglobal.com/en/service/transform-advisory-services. These services most certainly involve the use of AI.

5. On May 2021, Riley Catone from MLA, contacted me via DM in LinkedIn and requested an interview. Presumably, she found me on LinkedIn using Navigator, a tool designed by LinkedIn for use by HR professionals. Both the DM function in LinkedIn, and Navigator are AI powered tools. See Exhibit 1, screenshot of first DM from Riley Catone in LinkedIn.

6. On May 12, 2021 Riley Catone called me to interview me. In our first phone conversation, Riley Catone made 2 stunning admissions: 1) She admitted that the MLA "system did not work", and women with gaps in their resumes were "getting left behind" in the job market, and 2) She admitted she was having difficulty "getting businesses past the motherhood gap" when reviewing candidates. She said I was a "rockstar" and wanted to sell my services to businesses for the max rate of $250/hr for 40 hour/wk projects. I am not sure why the complaint says only $100,000/yr, but I wanted to correct the salary information to reflect the $250/hr, as originally presented to me by MLA.

7. On May xx, 2021, I emailed my updated resume and bio, to Riley Catone, at her request, to be forwarded to Uber in response to the job posting she provided me[4].

8. On May 8, 2021, I sent a DM in LinkedIn to Ruby Zefo, Chief Privacy Officer for Uber to inform her that my resume should be coming over for consideration. Ruby replied via DM on May 8, 2021 that "her team doesn't have any openings right now, so I am not sure what's posted." See Exhibit 2(a) and (b) Screenshots of my DM to Ruby Zefo, and her reply.

---

[4] When I emailed my resume to Riley Caton at MLA in May of 2021, I had 2 years of experience as a privacy attorney with the CIPP/US certification. The rest of my resume shows a gap during my thirties (the motherhood gap) and my years of prior experience as an attorney before transitioning into privacy law. I cannot be a member of the bar for 20 years, and only be in my 30s.

9. On May  Riley Catone had no explanation as to what happened with the job at Uber, and instead offered a position at Zendesk. See Exhibit 3, screenshot of Zendesk position.

10. On May19, 2021, days after Riley said she sent my resume over to Zendesk, I sent a DM in LinkedIn to Shanti Ariker, General Counsel and Chief Privacy Officer for Zendesk to inform her that my resume should be there for consideration. She replied the same day "Thanks for your interest, but the job has been filled". See Exhibit 4, Screenshot of DMs to and from Shanti Ariker.

11. On May 21, 2021, I emailed Riley to request an update. I am unsure why she did not send my resume to Zendesk. I advised her that the role was filled, to call her out on her misrepresentations about where she was sending my resume. She did not confirm whether or not she sent my resume to either Uber or Zendesk, nor what notes or other data was in her system about me.

12. On September 21, 2021 Riley Catone emailed me about a part time position with Mercedes. She knew I was looking for a full time position, and it appeared to be an attempt to boost her numbers at the end of the fiscal quarter. I discussed the issue with my family, and decided to file charges with the EEOC[5]. It was time to get off the hamster wheel of false hope.

13. In November of 2021, I filed a timely complaint with the Baltimore Field Office of the EEOC. Interviews were conducted in March and April of 2022.

14. In May of 2022, the EEOC filed the "Charges of Discrimination" against MLA. See Exhibit 5, EEOC Charging document.

---

5 As I was preparing my charges for the EEOC, I saw a post on LinkedIn from Riley Catone celebrating her big new bonus which allowed her to pay off all of her student loans.

15. On May 4, 2022 Cherie Basener from the DC office of MLA emailed me offering to try and get me a job. The EEOC was in the process of filing the Charges of Discrimination (filed May 31, 2022) and I did not reply because our prior course of dealings showed them not to be trustworthy. I forwarded the email immediately to Luis Ferrier who was working on my case at the EEOC and I asked him to include it in my case file. Consumers should not have to file a complaint with a government agency to get a recruiter to work for them in earnest.
16. In November of 2022, MLA finally decided to respond. They falsely claimed that they did not use AI, "we use humans", and they produced a bunch of my posts from LinkedIn that were published after I filed the complaint with the EEOC, but they presented no real defenses to my charges.
17. On December 27, 2022, I responded to their position statement, and the EEOC started their investigation[6] in early January 2023.
18. In May of 2023, the EEOC notified me that they were not going to file suit, they were issuing the Right to Sue letter soon, and they were "very interested to see what I do with this case". See Exhibit 6, EEOC Right to Sue letter, issued May 8, 2023.
19. I allege Defendants are using algorithmic, machine learning, and other technical tools in the conduct of their business, and their use of such tools caused me to be unlawfully discriminated against on the basis of my age, and gender in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. and Title VII of the

---

[6] Just 2 weeks after Defendant received my response (filed 12/27/2022) and the EEOC started their investigation, Defendant bought an entire legal tech company, Hire An Esquire, presumably because they knew I was right about their discriminatory tech tools, and the regulators were now watching them. https://www.reuters.com/legal/transactional/legal-recruiter-major-lindsey-acquires-freelance-lawyer-startup-2023-01-05/

Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. The use of these tools does not negate or shift businesses' liability for the harms being done to protected classes of persons, nor does it excuse businesses from their obligations to deploy less discriminatory measures. Not auditing and testing your AI tools for bias and disparate impact is negligent, in light of the harms we now know to exist from the use of these tools, especially in the employment space. MLA claims they do not use these tools, but they also claim to be the "world's largest legal recruiter", with physical offices located around the world. They cannot conduct such a business, on a global scale, without the use of AI, machine learning, and other technical tools to process their data. They simply do not employ enough humans to do this work manually, nor is it economically feasible. Defendant Allegis owns several companies using these tools, including MLA. Further discovery in needed to ascertain the nature and scope of the technicals tools used by Defendants.

20. I allege Defendants are intentionally misrepresenting the nature and scope of their reliance upon technical tools. From the MLA Internal Employee Handbook: "Information Classification Policy- provides guidelines for classifying, the Company's information by sensitivity level, and established consistent security requirements for classifying, labeling, handling and disposing of information in a secure manner". In any technical tool, the data must be classified, tagged, or otherwise labeled in order for the AI tools to process the data, for any purpose, including cyber security (which also uses AI assisted tools). MLA uses AI and other technical tools, just like every other data broker/recruiter. They are misrepresenting their systems as "databases" in an attempt to skirt liability for the harms resulting from their

deploying untested and discriminatory technical tools. See Exhibit 7, Screenshot of MLA's Internal Employee Handbook.

21. I allege Defendants are unlawfully collecting and processing data for monetary gain, while refusing to comply with the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and using unverified data, and untested algorithmic tools to make employment related decisions, which generates disparate impacts on protected classes of persons. Just stating "Not for FCRA Purposes" on your website does not make it true. AI and machine learning tools used by hiring professionals and HR departments operate using vast amounts of unverified data in the training process, and after deployment[7]. These tools are designed to classify, rank, and make decisions about humans, based on unverified data, scraped from the internet, inferred by algorithms, packaged into "hidden" candidate profiles that are used for employment purposes and monetized for sale (and sharing) within the digital adtech ecosystem. Applicants think they are only providing a resume for consideration of employment. Consumers have no way to see the distribution chain of their own data within this ecosystem, nor the profits derived from the sale of their data by these brokers. One cannot go to every one of the thousands of data brokers and ask them to provide, and then correct, all of the garbage data within their files. This process is patently unfair to consumers, and offers complexity as cover for businesses' unlawful and discriminatory practices.

---

[7] Today, employers have access to the same microtargeting, behavioral targeting, and performance-driven advertising tools as the broader e-commerce sector. How and where employers choose to use these tools plays an important role in determining the overall demographics of who learns about job postings and who ultimately applies. https://www.upturn.org/static/reports/2018/hiring-algorithms/files/Upturn%20--%20Help%20Wanted%20-%20An%20Exploration%20of%20Hiring%20Algorithms,%20Equity%20and%20Bias.pdf

22. I allege Defendants are using tools that have automated discrimination by designing and programming metrics that result in negative results and disparate impacts on protected classes of persons. One metric used by these systems is called "job progression". Job progression measures how long a person was in a position before they were promoted, or moved on to a better, or different job. This metric generally disqualifies and excludes anyone with a gap in their resume, such as people with a prolonged personal illness, those caring for a family member, people who were laid off from work, women with a motherhood gap, and many others in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. The job progression metric (and other metrics used in these tools) disproportionately impacts women and people of color, because they are more likely to have gaps in their resumes, effectively excluding them from job opportunities. There are many other questionable and discriminatory metrics used by these systems today, and without transparency and accountability for businesses who are profiting while causing these harms, they will continue to cause harm and disparate impacts on protected classes of persons. Becoming a mother did not make me any less of a lawyer, and I should not be discriminated against and excluded from employment opportunities simply because I am a woman over 40 with a gap in my resume. Defendants have violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq.

23. I allege Defendants unlawfully classified me in their systems, or allowed their systems to classify me automatically, in such a way that prevents my resume from being referred to businesses for employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. From Harvard Business School's study "Hidden Workers", published

in 2021: "Most (recruiting management/marketing or applicant tracking systems) also use a failure to meet certain criteria (**such as a gap in full-time employment**) as a basis for excluding a candidate from consideration irrespective of their other qualifications. As a result, they exclude from consideration viable candidates whose resumes do not match the criteria but who could perform at a high level with training. A large majority (88%) of employers agree, telling us that qualified high-skills candidates are vetted out of the process because they do not match the exact criteria established by the job description. That number rose to 94% in the case of middle-skills workers." https://www.hbs.edu/managing-the-future-of-work/Documents/research/hiddenworkers09032021.pdf

24. I allege Defendants systems are furthering discrimination because they have failed to conduct the proper audits for algorithm bias and disparate impacts, and the continued use of these tools is harming consumers[8]. As recently reported by CNN: "Research by international nonprofit Global Witness shows Facebook's ad platform often targets users with job postings based on historical gender stereotypes. Job advertisements for mechanic positions, for example, were overwhelmingly shown to male users, while ads for preschool teachers were shown mostly to women users, according to data Global Witness obtained from Facebook's Ad Manager platform. Additional research shared exclusively with CNN by Global Witness suggests that this algorithmic bias is a global issue, the human rights group says." https://

[8] The same unverified data used by these systems to attract, hire, promote and monitor people are also being used to conduct mass layoffs. The Washington Post reports "A January survey of 300 human resources leaders at U.S. companies revealed that 98 percent of them say software and algorithms will help them make layoff decisions this year." https://www.washingtonpost.com/technology/2023/02/20/layoff-algorithms/

edition.cnn.com/2023/06/12/tech/facebook-job-ads-gender-discrimination-asequals-intl-cmd/index.html.

25. I allege Defendants are defrauding the general public by concealing their data collection and processing practices, and monetizing consumers' data without their knowledge or consent. Consumers cannot see the tracking pixels from Facebook/Meta and others dropped into their devices when they visit the mlaglobal.com website, and there is no cookie banner to alert them of this data collection and processing. I have never had an account with Meta, and I first discovered the Meta tracking pixels when reviewing Defendant's tech stack, behind their website, to prepare my complaint for the EEOC. The adtech flows for this website shows all of the many data brokers receiving data from the MLA website. Allegis is one of the first recipient of all data coming from MLA, and the data flows onward from them to other data brokers[9]. See Exhibit 8, Adtech flows screenshot, using pagexray tool.

26. I allege Defendants are defrauding the general public by concealing their Privacy Notices. In preparing for this case before the Court, I tried to review the Privacy Notices for the mlaglobal.com website and allegisgroup.com, and they were missing, with only blank pages under the title "Privacy Notice". The Privacy Notices have been missing for at least 3 weeks. How are applicants supposed to know what will happen with their data if Defendants intentionally conceal their policies and notices? As a practitioner in this area, I know businesses update their Privacy Notices on occasion, but I have never seen a business take them down completely, and leave them down, in anticipation of litigation. See Exhibits 9 and

[9] To review the full tech stack for the mlaglobal.com website, including their 87 API integrations collecting and processing personal data, see https://builtwith.com/mlaglobal.com

10, Privacy Notices missing, screenshots of MLA and Allegis with blank Privacy Notice pages.

27. I allege both MLA and Allegis are concealing their Privacy Notices in an effort to prevent me from including relevant facts contained in their Privacy Notices, in this case against them. This is an unfair and deceptive practice, and further discovery is needed to ascertain the truth behind their concealing their Privacy Notices from the public, when they both had prior notice of this anticipated litigation. During the EEOC's investigation, I thought the attorney handling my case would ask pertinent questions about my charges, but he seems to have taken Defendant's word on just "using databases" and denying their use of AI, machine learning, and other technical tools. I gave the EEOC a list of 20 questions to ask about my data[10], and from the FOIA request, I can see that they failed to do so during the investigation. Riley Catone was noted by Andrew Michener (EEOC attorney) to be "using databases" and no further questions were asked about those databases or my data. Further discovery is needed in this case to ascertain the truth behind Defendants data collection and processing.

[10] The questions from my response to Defendant's position statement: "What happened here? Did they add more of my data (from my updated resume that they requested) into their broken system, and then furnish/sell it to others, creating a "false light' profile about me (potentially causing defamation and other reputational harm)? Is their data furnishing to others preventing me from getting a job? What data is in my profile? Did they buy data about me? Do they use a third party vendor system as an ATS, applicant tracking system, or did they build their own tool? Have they done any audits for bias on their tools? What were the results? How did they mitigate known biases in the data training set for their model? What are the top features of the model, and how were they weighted? Did the data include inferences about members of my household? Mental health information? Were any political views inferred? Was I ranked, classified or tagged in any way? What was my candidate ranking? How did I stand up to the competition for these positions? How old were the people who ultimately got hired? How many of them were people who identify as women? Where did MLA get my data? How many third parties did they furnish/sell my data to, without my consent?"

28. I allege Defendants have been using Salesforce and other technical tools that process personal data since at least 2017. See Exhibit 11, Screenshot from FOIA of my email sent in 2017 to MLA, in response to an ad posting for a job, with their internal email forward noting "Added to Salesforce". Defendant intentionally misrepresented the facts to the EEOC by claiming "we use humans" in their position statement filed with the EEOC on November 11, 2022.

29. I allege Defendant unlawfully furnished data to others about me in an effort to disqualify me from being referred to employers because I filed a complaint with the EEOC about their discriminatory practices. Discovery is needed to ascertain if any defamatory or other inaccurate information about me is contained in Defendant's "hidden" candidate profiles, or other database or Applicant Tracking Systems and technical tools used by the Defendant. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

30. **State Law Claim.** I allege Defendant knowingly induced me, by making false representations and promising lucrative positions that did not exist, into emailing my personal data on my resume to them, so they could monetize my data, and they had no intention of getting me a job, or a reckless disregard for their obligation to try and present my resume for consideration of employment. I relied upon these representations, and provided my resume for consideration of employment, for 2 companies, Uber and Zendesk, and neither received my resume. I did not have knowledge of, or give my consent to Defendants, for any other uses of my personal information. Defendants knew they would get paid for my data, whether or not they got me a job, fueling their reckless disregard for telling the truth to candidates about available positions. Defendants' sharing/selling of my personal

data with hundreds of data brokers was fraudulently induced, and an unreasonable intrusion into my privacy. As a result of Defendant's fraud and misrepresentations, I have been harmed, and I am still looking for full time work, more than 2 years after the original cause of action arose in this case.

31. To recover for fraudulent inducement in Maryland, a plaintiff must prove: (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. Sinclair Broad. Grp., Inc. v. Colour Basis, LLC, No. CV CCB-14- 2614, 2016 WL 3541204, at *8 (D. Md. June 29, 2016), Case 1:18-cv-00998-MJG Document 17 Filed 06/20/18 Page 5 of 11 6 reconsideration denied, No. CV CCB-14-2614, 2017 WL 818713 (D. Md. Mar. 2, 2017). In order to recover under this theory, "the misrepresentation must be made with the deliberate intent to deceive." Id. Daniel Mccullough vs. The Automobile Insurance Company of Hartford, CT, US District Court for the District of Maryland. https://www.govinfo.gov/content/pkg/USCOURTS-mdd-1_18-cv-00998/pdf/USCOURTS-mdd-1_18-cv-00998-0.pdf

32. In Greenly vs. Kochava, the US District Court for the Southern District of California recently held that the Plaintiff established injury in fact, causation, and redressability in a case against a data broker (Kochava) alleging harms resulting from their unlawful data collection and processing activities. California's Constitution includes an express right to privacy, and Maryland's does not, but the Court's recognition of privacy harms as

meritorious and sufficient to withstand Defendant's Motion to Dismiss, is instructive here. "A right to privacy 'encompass[es] the individual's control of information concerning his or her person.'" In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 598 (9th Cir. 2020) (quoting Eichenberger v. ESPN, Inc., 876 F.3d 979, 983 (9th Cir. 2017)). Violations of this right fall into the category of traditionally recognized harms. Patel v. Facebook, Inc., 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). As a result, intrusions into privacy can constitute an injury in fact." https://media.licdn.com/dms/document/media/D4E1FAQEMFL05UY8yQw/feedshare-document-pdf-analyzed/0/1690820160653?e=1691625600&v=beta&t=JcxqcNgOAN_eAKvUNpMi118y7l3Dj_opisbaAQJ59-Y

**V. Relief**

In this complaint, I have made specific allegations, based on factual evidence, and all claims stated in this Complaint are claims upon which relief can, and should, be granted. I have also raised questions that cannot be answered without further discovery in this case. I pray for the Court to enjoin Defendants from using algorithmic, machine learning, and other technical tools until the tools have been properly audited and remediated for bias and disparate impact, and they have implemented adequate data privacy consent collection and tracking programs in place. I also pray for the Court to require Defendants to make annual reports to the Chief Privacy Officer of Maryland, and the Maryland Attorney General's Office detailing their audit results and remediation activities, and I pray for the Court to order any other remedies available at law or in equity as the Court may determine necessary, to prevent future harm by Defendants. I pray for this Court to order compensatory damages in the amount of $500,000 for my lost work

opportunities since May of 2021. I also pray for the Court to order punitive damages for Defendants' intentional misrepresentations about their data collection and processing practices, for Defendants' unlawfully discriminating against me on the basis of age and gender, and for fraudulently concealing their Privacy Notices. This cannot be the future of work, nor of data privacy.

# Exhibits

1. Screenshot of first DM from Riley Catone, on LinkedIn. Taken 8.2.2023



**Riley Catone**
Counseling legal departments and law firms on maxi...

MAY 6, 2021

**Riley Catone** · 5:43 PM

**Interim Senior Commercial Counsel**

Hi Heidi-

I hope all is well! I have the attached Senior Commercial Counsel role and wanted to see if you may be interested in hearing more about it. Please let me know if youd like to schedule some time to talk!

Riley Catone
Connecting Legal Professionals with Unique Opportunities

DOC **Senior Commercial Cou...**
402 KB

2(a). Screenshot of my DM to Ruby Zefo in LinkedIn (her reply is below). Taken 8.2.2023

Chief Privacy Officer and AGC Privacy & Cybersecurity

Chief Privacy Officer and AGC Privacy & Cybersecurity at Uber

MAY 8, 2021

**Heidi Saas** · 11:44 AM

Hi Ruby-
When I saw an opening at your company, I jumped at the chance. Your postings and webinar talks are inspiring, and I would love to be a part of your team. It is a small position, but honestly, I would wash windows if I could also learn from your work in the process. I attached the link the recruiter sent me for our call on Monday. Happy Mother's Day!
https://www.linkedin.com/dms/C5606AQF85qbn27-Lpg/messaging-attachmentFile/0/1620337348796?m=AQJWKccQG3JXbgAAAXlMom_ay2hvKSLNJqjrikemvVv9HWR47sajJN82&ne=1&v=beta&t=kr87YIKcUAnWPfQBjXlmGkK1OtBd4BFf-MfYf1WVc-o&lipi=urn%3Ali%3Apage%3Amessaging_thread%

Write a message...

GIF Send •••

2(b). Screenshot of Ruby Zefo's reply DM in LinkedIn. Taken 8.2.2023

**Ruby Zefo**
Chief Privacy Officer and AGC Privacy & Cybersecurity

is a small position, but honestly, I would wash windows if I could also learn from your work in the process. I attached the link the recruiter sent me for our call on Monday. Happy Mother's Day!
https://www.linkedin.com/dms/C5606AQF85qbn27-Lpg/messaging-attachmentFile/0/1620337348796?m=AQJWKccQG3JXbgAAAXlMom_ay2hvKSLNJqjrikemvVv9HWR47sajJN82&ne=1&v=beta&t=kr87YIKcUAnWPfQBjXlmGkK1OtBd4BFf-MfYf1WVc-o&lipi=urn%3Ali%3Apage%3Amessaging_thread%3BJO8UebDnQ9yVYs7ileCGrQ%3D%3D

**Ruby Zefo** (She/Her) • 8:24 PM

Hi Heidi, the link isn't opening for me but my team doesn't have any openings right now so I'm not sure what's posted.

3. Screenshot of Zendesk position, emailed to me by Riley Catone form MLA. Taken 8.2.2023

**[7] Zendesk**

2

**From** Catone, Riley <RCatone@MLAGlobal.com> May 11, 2021

**To** Heidi Saas

Hi Heidi-

It was SO great chatting with you today!! Here is all the info that you need for the role with Zendesk. I have highlighted the area that is most important to touch on in your bio. Let me know if you have any questions!!

**Background Information on the Client- Financial Information, Public/Private Status, F500/3K Status/Product Lines:**

Zendesk Inc. is an American customer service software company headquartered in San Francisco, California, USA. It is listed on the New York Stock Exchange with the symbol ZEN and is a constituent of the Russell 2000 Index.

Zendesk is a service-first CRM company that builds software designed to improve customer relationships. As employees, we encourage each other to

4. Screenshot of DMs to and from Shanti Ariker. Taken 8.2.2023

**Shanti Ariker**
General Counsel, Chief Privacy Officer & Corporate Sec
Zendesk / Public Company Board Member

MAY 19, 2021

**Heidi Saas** · 7:42 AM

Hi Shanti-
I would love to be on your team if you still have an opening for a data privacy and tech attorney. I like that your experience includes working on a global scale, and your current company looks to have upward growth potential. How long after the recruiter ghosts should I wait before reaching out and submitting my resume myself? A few days is plenty (or too many), and I applied on your company website as well. Please let me know if you would like more awesomeness on your team. Thank you for your time, and Happy day! 😎

**Shanti Ariker** · 9:07 AM

Thanks for your interest but the job has been filled.

5. EEOC Charging document, filed May 31, 2022. Home number redeacted. Screenshot taken 8.2.2023

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | EEOC | 531-2022-00554 |
| | FEPA | |
| Maryland Commission on Civil Rights<br>*State or local Agency, if any* | | and EEOC |

| Name (*indicate Mr., Ms., Mrs.*) | Home Phone | Year of Birth |
|---|---|---|
| Heidi Saas | [redacted] | 1975 |
| Street Address<br>3115 Jarrettsville Pike<br>MONKTON, MD 21111 | | |
| Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*) | | |
| Name | No. Employees, Members | Phone No. |
| MAJOR LINDSEY & AFRICA LLC | Unknown Number Of Employees | |
| Street Address<br>7317 PARKWAY DR<br>HANOVER, MD 21076 | | |
| Name | No. Employees, Members | Phone No. |
| | | |
| Street Address | | |
| DISCRIMINATION BASED ON<br>Sex, Age | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest 09/21/2021 | Latest 09/21/2021 |
| THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*): | | |

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br><br>*Date* *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

Charge+of+Discrimination.pdf
Page 2 of 3

Search

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>EEOC<br>FEPA | Agency(ies) Charge No(s):<br>**531-2022-00554** |
|---|---|---|

**Maryland Commission on Civil Rights** and EEOC

*State or local Agency, if any*

I.On 9/21/2021 I was contacted via LinkedIn by a recruiter from Respondents agency. Respondent promised tremendous salaries of up to $100,000 to $200,000 a year for JD licensed applicants. I think they are using screening tools such as data analytics/date of birth inquiries to screen-out applicants. Based on my age, I feel I was segregated from other younger applicants, in return, Respondent did not refer me to future jobs and later disappeared (ghosting). Respondent was also advertising they could assist mothers with gaps in their resume.II.When I tried to contact the Respondents recruiters, I never heard back from them. III.I believe I was discriminated because of my age (47) and sex (female) in violation of the Age Discrimination in Employment Act of 1967, as amended; and, Title VII of the Civil Rights Act of 1964, as amended.

6. EEOC Right to Sue letter, issued May 8, 2023. Screenshot taken 8.2.2023

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Baltimore Field Office**
GH Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Email: BFOContact@eeoc.gov
Website: www.eeoc.gov

**DETERMINATION AND NOTICE OF RIGHTS**

(This Notice replaces EEOC FORMS 161 & 161-A)

To: Heidi Saas
3115 Jarrettsville Pike
MONKTON, MD 21111

Re: Heidi Saas v. MLA INTERIM LEGAL TALENT, LLC
EEOC Charge Number: 531-2022-00554

EEOC Representative and phone: Philadelphia Legal Unit, (267) 589-9700

**DETERMINATION OF CHARGE**

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

**NOTICE OF YOUR RIGHT TO SUE**

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Rosemarie Rhodes
Fri May 08, 2023

Rosemarie Rhodes
Director

CC: Kraig B. Long
Nelson Mullins Riley & Scarborough LLP

7. Screenshot of MLA's Internal Employee Handbook. Taken 8.2.2023

## Major, Lindsey & Africa and Allegis Partners Internal Employee Handbook

Resources, or Company Leadership (President, CFO, V.P, Executive Director) so appropriate action may be taken. Employees may also confidentially report client requests and/or discriminatory employment practices to the Code of Conduct and Ethics Hotline 866-377-7489; or send an e-mail to corporateethicsofficer@allegisgroup.com. Employees will not be subject to retaliation or retribution for filing a report.

Any employee who engages in discriminatory practices on behalf of a client including, but not limited to, steering certain individuals based upon their Protected Characteristic to certain jobs – because of expressed or perceived client preferences – has violated Company policy and will be subject to discipline, up to and including immediate termination.

### Internal Investigations, Employee Cooperation

The Company may use any lawful method of investigation, which in its sole discretion; it deems reasonable and necessary to determine whether any employee has engaged in conduct warranting disciplinary action. All employees are expected to cooperate in any investigation. Failure to cooperate in any investigation may lead to discipline, up to and including immediate termination. False information provided in the course of an investigation may also result in discipline, up to and including immediate termination.

### Information Security

The Company is committed to ensuring the safety, security and privacy of personnel and Company data in adherence with data protection and data privacy laws. The goal of the Information Security Management Framework is to ensure all information assets identified with, owned by, or entrusted to the Company are protected in a manner consistent with the value attributed to them by the Company in accordance with business requirements, customer requirements, and relevant laws and regulations. The Information Security Management Framework includes the following Company policies:

- Information Security Policy - contains important rules covering information security and establishes safeguards and controls to protect the Company's informational assets from loss and from unauthorized access, modification, destruction, or disclosure. This includes rules around storage of data and encryption of data.
- Information Classification Policy - provides guidelines for classifying the Company's information by sensitivity level and establishes consistent security requirements for classifying, labelling, handling, and disposing of information in a secure manner

8. Screenshot taken 8.2.2023 of mlaglobal.com website showing Adtech Data Flows to Allegis, and other Data Brokers, including Meta, Google, Hubspot, and LinkedIn. https://pagexray.fouanalytics.com/q/mlaglobal.com?f=



9. Screenshot of blank Privacy Notice page on mlaglobal.com website. Taken 8.2.2023



10. Screenshot of blank Privacy Notice page on allegisgroup.com website. Taken 8.2.2023



11. Screenshot of an email I sent to MLA in 2017, and they forwarded it internally, with the note "Added to Salesforce". Taken 8.2.2023

**Josh Myers**

| | |
|---|---|
| **From:** | Toller, Sharla |
| **Sent:** | Wednesday, May 31, 2017 6:51 PM |
| **To:** | Brown, Kelley |
| **Subject:** | Re: WGL Web Sub - Heidi Saas |
| **Categories:** | Blue Category, Added to Salesforce |

MLA ni

Sent from my iPhone

On May 31, 2017, at 4:26 PM, Brown, Kelley <kelbrown@MLAGlobal.com> wrote:

Kelley Brown
ADMINISTRATIVE ASSISTANT
600 13th Street NW, Suite 750, Washington, DC 20005
O 202-292-2883
<image001.jpg>
<image002.jpg> <image003.jpg> <image004.jpg> <image005.jpg>

---

**From:** heidi saas [mailto:heidisaas@yahoo.com]
**Sent:** Wednesday, May 31, 2017 11:58 AM
**To:** WashGasCompliance
**Subject:** Attorney with compliance and management experience

My resume is attached for your consideration. I am ready to go back to work now, full time, after having been at home with my children for the past 3 years. Please do not limit me to "mommy" opportunities, as I intend to return to working normal attorney hours. Thank you and have a great day!

Best wishes,
Heidi Saas

This electronic mail (including any attachments) may contain information that is privileged, confidential