IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**HEIDI SAAS,**

    *Plaintiff*,

    v.

**MAJOR, LINDSEY & AFRICA, LLC,**
*et al.*,

    *Defendants*.

Civil No.: 1:23-cv-02102-JRR

## MEMORANDUM OPINION

Pending before the court is Defendants' Motion to Strike Plaintiff's Complaint, or, in the Alternative, Motion to Dismiss (ECF No. 6; the "Motion"). The court has reviewed all papers, and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion (ECF No. 6), construed as a motion to dismiss, will be granted.

## I. BACKGROUND

This action arises from Plaintiff's contacts with a recruiter from Major, Lindsey & Africa, LLC ("MLA").[1] (ECF No. 1; the "Complaint.") In May of 2021, Plaintiff received a message from Riley Catone, a recruiter with MLA, on LinkedIn, requesting an interview. (ECF No. 1-1 ¶ 5.) Thereafter,[2] Ms. Catone had a phone interview with Plaintiff in which she told Plaintiff that MLA's "system did not work," that "women with gaps in their resumes were 'getting left behind' in the job market," and that she had "difficulty 'getting businesses past the motherhood gap' when reviewing candidates." *Id.* ¶ 6. Ms. Catone told Plaintiff that she was a "rockstar" and "wanted

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 3.) *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).
[2] Plaintiff states that this interview occurred on May 12, 2021, but that date does not appear to be correct based on the other allegations of the Complaint and the attached exhibits. (ECF No. 1-1 at p. 3, 16, 19.)

to sell [her] services to businesses." *Id.* Following that call, Plaintiff emailed her resume to Ms. Catone for a job posting at Uber. *Id.* ¶ 7. Ms. Catone shared the Uber job posting with Plaintiff. *Id.* Plaintiff then messaged the Chief Privacy Officer at Uber via LinkedIn to let her know that her resume would be submitted for the position, and the Chief Privacy Officer responded that her team did not have any openings at that time.³ (ECF No. 1-1 ¶ 8.) Days later, Ms. Catone contacted Plaintiff about another position with Zendesk. *Id.* at p. 19. Plaintiff again provided her resume for the position with Zendesk. *Id.* ¶ 10. Plaintiff then messaged the Chief Privacy Officer at Zendesk via LinkedIn to inform her that her resume had been submitted, but the Chief Privacy Officer responded that the position had been filled. *Id.* ¶ 10. Thereafter, Plaintiff asked Ms. Catone for an update on her applications and states Ms. Catone "did not confirm whether or not she sent [her] resume to either Uber or Zendesk." *Id.* ¶ 11. On September 21, 2021, Ms. Catone emailed Plaintiff about a part-time position, which Plaintiff declined. *Id.* ¶ 12. On May 4, 2022, another MLA employee emailed Plaintiff about another job, and Plaintiff did not respond. (ECF No. 1-1 ¶ 15.)

Plaintiff filed a charge of discrimination against MLA with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 31, 2022, alleging that she "think[s]" MLA "[is] using screening tools . . . to screen-out applicants," and that MLA "did not refer [her] for future jobs and later disappeared." *Id.* at p. 21–22. On May 8, 2023, EEOC issued a Right to Sue letter to Plaintiff. *Id.* at p. 23. Plaintiff filed the Complaint in this court on August 4, 2023 against MLA and Allegis Group, Inc. ("Allegis"). (ECF No. 1.) Plaintiff contends that Allegis "owns MLA." *Id.* ¶ 3. Though at times inconsistent, Plaintiff asserts the following claims: failure to refer and

---

³ The manner in which Plaintiff pleads these allegations in her Complaint suggests she found out that there was no open position with Uber *before* she sent her resume to Ms. Catone. (ECF No. 1-1 ¶¶ 6–8.) Because such a reading is inconsistent with her claims and would certainly invalidate the claims to that allegation, the court assumes that dates identified in the Complaint are typographical errors.

"algorithmic bias" in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"); retaliation in violation of Title VII and the ADEA; and fraudulent inducement in violation of Maryland law.  (ECF No. 1.)

Plaintiff alleges in her Complaint that Defendants use "algorithmic, machine learning, and other technical tools in the conduct of their business, and their use of such tools caused [her] to be unlawfully discriminated against on the basis" of her sex and age.  (ECF No. 1-1 ¶ 19.)  Plaintiff admits, however, Defendants asserted that they do not use artificial intelligence and that discovery is needed to ascertain the nature of the tools.[4]  *Id.*  She alleges that Defendants' artificial intelligence, "job progression" "tools" result in "automated discrimination" and "result in negative results and disparate impacts" against people who, like Plaintiff, have a "motherhood gap" in their employment.[5]  *Id.* ¶ 22.  As a result, Plaintiff believes that Defendants unlawfully classified her in a way that prevented her resume from being referred to businesses for employment.  *Id.* ¶ 23. Plaintiff simultaneously argues that there were no available positions, and that Defendants instead wanted her resume so they could be "paid for [her] data."  *Id.* ¶ 30.

Plaintiff also states that one of the Defendants (but does not identify which one) retaliated against her by "creating and furnishing . . . defamatory data" about her to others "in an effort to disqualify [her] from being referred to employers because [she] filed" a charge of discrimination with EEOC.  (ECF No. 1-1 at p. 1, ¶ 29.)  However, she admits that discovery is needed to determine whether they actually did as alleged.  *Id.* ¶ 29.

Finally, Plaintiff alleges that one of the Defendants, presumably MLA, knowingly induced

---

[4] Plaintiff's response in opposition to the Motion further clarifies that her allegation is based on the assumption that because "Allegis made 14.8 Billion in 2022, brokering globally in recruitment and employment data," that Defendants cannot process "all of [that] data" without artificial intelligence.  (ECF No. 10 at p. 7.)
[5] Although Plaintiff does not define the phrase "motherhood gap," it is apparent from context that it refers to the period of time in her thirties when she was raising her children and not actively participating in the workforce.  (ECF No. 1-1 at p. 3 n.4.)

3

her to email her personal data (her resume) to it "by making false representations and promising lucrative positions that did not exist." *Id.* ¶ 30. MLA did so to "monetize [her] data," with "no intention of getting [her] a job, or [with] a reckless disregard for their obligation to try and present [her] resume for consideration of employment." *Id.*

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(f)

Federal pleading requirements require that a claim for relief contain "a short and plain statement of the claim showing the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Accordingly, under Rule 12(f), the court may, on its own or on motion by a party, "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter" where it is insufficient. FED. R. CIV. P. 12(f). "In determining whether to grant a motion to strike, the court 'enjoys wide discretion . . . in order to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial.'" *Baltimore v. Baltimore City L. Dep't*, No. CV ELH-22-1901, 2022 WL 17812642, at *2 (D. Md. Dec. 16, 2022) (quoting *Haley Paint Co. v. E.I. du Pont de Nemours & Co.*, 279 F.R.D. 331, 336 (D. Md. 2012)). "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation omitted). Accordingly, on a Rule 12(f) motion, the court "must view the pleading under attack in a light most favorable to the pleader." *Haley Paint Co.*, 279 F.R.D. at 336.

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

4

*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

Relevant here, "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 WL 511910, at *2 (D. Md. Feb. 8, 2017) (citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)). "Liberal construction means that the court will read the pleadings to state a valid claim to the extent

5

that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented." *Id.* (citations omitted).

## III. ANALYSIS

Defendants first ask this court to strike the complaint, as it constitutes a "shotgun pleading" that fails to apprise Defendants of the claims against them and the grounds in support of the specific claims.[6] (ECF No. 6-1 at p. 8–9.)  Alternatively, Defendants argue that Plaintiff's Complaint should be dismissed because it fails to state plausible claims under Title VII, the ADEA, and Maryland law.[7] *Id.* at p. 10–18.  Plaintiff opposes the Motion. (ECF No. 10.)

### A. Motion to Strike Plaintiff's Complaint

Defendants argue the Complaint as a whole should be struck as a "shotgun pleading." (ECF No. 6-1 at p. 7.) "A 'shotgun pleading' is one that 'fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief[.]" *Baxter v. AmeriHome Mortg. Co., LLC*, 617 F. Supp. 3d 346, 351 (D. Md. 2022) (quoting *Lee v. Meyers*, No. ELH-21-1589, 2022 WL 252960, at *11 (D. Md. Jan. 27, 2022)). *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'"). However, here, Plaintiff has articulated at least some claims with sufficient clarity. For example, Plaintiff sets forth her allegations with respect to her fraudulent inducement claim in Paragraphs 30 through 32. As a result, Defendants' argument to strike the whole

---

[6] Defendants also argue that Plaintiff's pleadings should not be afforded the "special judicial solitude" afforded to *pro se* parties because she is a lawyer. (ECF No. 6-1 at p. 6.) However, while Plaintiff is an attorney, she is not barred in this court, nor has she claimed any litigation practice or experience. Despite being a lawyer, Plaintiff is still a *pro se* litigant whose pleadings are subject to liberal construction. *See Erickson*, 551 U.S. at 94, *supra*.

[7] Defendants also argue that all claims against Allegis should be dismissed because Allegis does not own MLA contrary to Plaintiff's allegations. (ECF No. 6-1 at p. 9–10.) At this stage, the court accepts the allegations of the Complaint as true. The court is thus not persuaded that Allegis should be dismissed solely based on a factual dispute.

Complaint is unwarranted. The court will therefore decline to exercise its discretion to strike the Complaint and will instead view the Motion as one seeking to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). To the extent there are remaining allegations and claims that may constitute impermissible "shotgun pleading," the court will address them in the context of the motion to dismiss. *See McCrea v. Wells Fargo*, No. CV RDB-18-2490, 2019 WL 2513770, at *7 (D. Md. June 17, 2019), *aff'd,* 852 F. App'x 112 (4th Cir. 2021) (discussing dismissal for impermissible "shotgun pleading" under Rule 12(b)(6)).

### B. Title VII and the ADEA Claims

Both Title VII and the ADEA prohibit employment agencies—meaning, "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer"—from unlawfully discriminating against applicants.[8] 42 U.S.C. § 2000e(c). *See* 29 U.S.C. § 630(c) ("The term 'employment agency' means any person regularly undertaking with or without compensation to procure employees for an employer."). Specifically, it is unlawful for an employment agency "to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of," relevant here, her sex or age. 42 U.S.C. § 2000e-2(b); 29 U.S.C. § 623(b).

"[T]here are few cases dealing with discrimination by employment agencies," specifically with respect to discrimination in failure to refer for employment. *Syed v. S.C. Vocational Rehab. Dep't*, No. 2:14-CV-02576-RMG, 2015 WL 1622094, at *6 n.9 (D.S.C. Apr. 10, 2015). *See Koger v. Allegheny Intermediate Unit*, No. CIV.A. 10-1466, 2012 WL 603565, at *12 (W.D. Pa. Feb. 24, 2012), *aff'd,* 495 F. App'x 266 (3d Cir. 2012) (same); *Shah v. Littelfuse Inc.*, No. 12 CV 6845, 2013 WL 1828926, at *7 (N.D. Ill. Apr. 29, 2013) (same). Considering the plain language of the

---

[8] At least for the purposes of their Motion, Defendants appear to concede they are an employment agency within the meaning of Title VII and the ADEA. (ECF No. 6-1 at p. 10.)

statutes, "the plaintiff must show that the employment agency discriminated against her 'based on her [protected status] in relation to referrals.'" *E.E.O.C. v. Kelly Servs., Inc.*, 598 F.3d 1022, 1030 (8th Cir. 2010) (citing *Williams v. Caruso,* 966 F. Supp. 287, 297 (D. Del. 1997). Similarly, both Title VII and the ADEA also make it unlawful for an employment agency to discriminate against any individual because she has, relevant here, "made a charge, testified, assisted, or participated in any manner in an investigation [or] proceeding" under the statute. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). *See Scaglione v. Chappaqua Cent. Sch. Dist.*, 209 F. Supp. 2d 311, 315 (S.D.N.Y. 2002) ("Like employers, employment agencies may not retaliate against those opposing illegal practices.").

      1. <u>Failure to Refer Claim / Algorithmic Bias Claim</u>

As state *supra*, employment agencies may not "fail or refuse to refer for employment" and individual because of her sex or age. 42 U.S.C. § 2000e-2(b); 29 U.S.C. § 623(b). To demonstrate such a claim, a plaintiff "must allege that the employment agency refused or failed to refer the [her] to an available position with an employer on the basis of a discriminatory animus regarding the protected factor." *Syed*, 2015 WL 1622094, at *6 n.9. *See Kelly Servs., Inc.*, 598 F.3d at 1030 ("The plain language of § 2000e–2(b) states that an employment agency violates Title VII if it "fail[s] or refuse[s] to refer for employment . . . any individual because of his . . . [protected status].").

To the extent Plaintiff's claim is based on disparate treatment, she has failed to state a claim. First, Plaintiff does not allege that Defendants refused, or failed, to refer her for an available position based on her protected status. She instead contends that they did so because they wanted to profit from the sale of her data. (ECF No. 1-1 ¶ 30.) Moreover, Plaintiff alleges that no available

8

positions actually existed and instead were merely a ruse to access and misuse her personal information. *Id.*

Plaintiff's allegation of "algorithmic bias" is similarly insufficient. Plaintiff alleges that Defendants use "job progression" "tools" that "generally disqualif[y] and exclude[] anyone with a gap in their resume," having a disparate impact on women with a "motherhood gap," like Plaintiff. (ECF No. 1-1 ¶ 22.) Under 42 U.S.C. 2000e-2(k), Title VII provides:

> An unlawful employment practice based on disparate impact is established under this subchapter only if-
>
> (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity . . .

42 U.S.C. § 2000e-2(k)(1)(A)(i). *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 232 (2005) (holding "that the ADEA does authorize recovery in 'disparate-impact' cases"). "Thus, a plaintiff establishes a prima facie disparate-impact claim by showing that the employer '*uses* a particular employment practice that causes a disparate impact' on one of the prohibited bases." *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 212 (2010) (quoting 42 U.S.C. § 2000e-2(k)).

Plaintiff's claim fails here because it is entirely speculative. Plaintiff has not identified a particular employment practice that exists. Her allegation is based solely on supposition that Defendants use artificial intelligence tools because they are large businesses. (ECF No. 10 at p. 7.) Plaintiff's allegation, however, that MLA stated that it did not use artificial intelligence tools, directly contradicts her supposition. (ECF No. 1-1 ¶¶ 19, 22, 28.) Ms. Catone's comment that she had trouble "getting businesses past the 'motherhood gap'" does not change the court's analysis, as Plaintiff still does not allege a particular employment practice. Ms. Catone's comment, while

9

perhaps raising suspicion, does not relate to MLA's artificial intelligence system. *Id.* ¶ 6. Finally, as a separate matter, Plaintiff makes no meaningful allegation that the so-called "tools" have a disparate impact on applicants based on age. *See* ECF No. 1-1 at ¶ 22. She instead conclusorily alleges that Defendants "violated" the ADEA with their purported use of the artificial intelligence. *Id.* Even considered in the light most favorable to Plaintiff, Plaintiff's allegations are simply insufficient to state a plausible claim for relief for failure to refer in violation of Title VII and the ADEA.

    2. <u>Retaliation</u>

As explained *supra*, plaintiffs may prove that the employment agency "retaliated against them for engaging in protected activity through one of two ways: (1) by direct evidence of retaliatory animus; or (2) through the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework." *Walton v. Harker*, 33 F.4th 165, 171 (4th Cir. 2022) (citing *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015)). As is the case here, where there is no direct evidence of a retaliatory animus, a plaintiff must first set forth the elements of a *prima facie* case of retaliation under Title VII and the ADEA, meaning: "(1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." *Walton*, 33 F.4th at 177 (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011)).

While filing a charge of discrimination with the EEOC is certainly protected activity, Plaintiff otherwise fails to state a claim of retaliation under the law.[9] *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d), *supra.* The alleged adverse action on which Plaintiff rests is that Defendants

---

[9] Plaintiff's Complaint is inconsistent with respect to whether she intended to assert a retaliation claim. *See* ECF No. 1 at p. 5; ECF No. 1-1 at p. 1, ¶ 29 (stating in one part that she is not complaining of retaliation and stating in another that she was subject to retaliation in the form of "creating and furnishing . . . defamatory data" about her to others). Given the liberal pleading standard and for the sake of completeness, the court considers the claims.

"unlawfully furnished data to others about [her] in an effort to disqualify [her] from being referred to employers." (ECF No. 1-1 ¶ 29.) However, Plaintiff concedes that "[d]iscovery is needed to ascertain if any defamatory or other inaccurate information" was used—thus admitting that she has no factual basis beyond speculation to support her claim that such data was furnished to others. *Id.* This is further illustrated by Plaintiff's failure to identify the purported defamatory information disseminated. Further, elsewhere in the Complaint, Plaintiff identifies a different purported motive for Defendants' actions: unlawfully furnishing data about her for their own profit. *Id.* ¶ 21. Simply speculating something is true with no supportive factual allegations is insufficient to support a claim for relief. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 588 (4th Cir. 2015) (noting that, where a complaint left "open to speculation" the cause of defendant's employment decision, the cause was not plausible in light of the "obvious alternative explanation"). Finally, perhaps most fatal to her claim, Plaintiff has not alleged any connection between the purported adverse action and her protected activity beyond the conclusory allegation that Defendants did so "because" she filed the EEOC complaint. (ECF No. 1-1 ¶ 29.) The court cannot accept the conclusory allegation as true. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court thus concludes that, to the extent she intended to assert one, Plaintiff has failed to state a claim of retaliation in violation of Title VII or the ADEA.

## C. Fraudulent Inducement[10]

"Under Maryland law, '[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Topline Solutions, Inc.*

---

[10] A federal court sitting in diversity applies state substantive law when reviewing state law claims. *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

*v. Sandler Sys, Inc.*, No. ELH-09-3102, 2017 WL 1862445, at *32 (D. Md. May 8, 2017) (quoting *Sass v. Andrew*, 152 Md. App. 406, 432 (2003)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bourgeois v. Live Nation Entertainment Inc.*, 3 F. Supp. 3d 423, 435 (D. Md. 2014) (quoting *U.S. ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)). This is often "referred to as the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted).

"The tort of fraudulent inducement 'means that one has been led by another's guile, surreptitiousness or other form of deceit to enter into an agreement to his detriment.'" *Rozen v. Greenberg,* 165 Md. App. 665, 674 (2005) (quoting *Sec. Constr. Co. v. Maietta,* 25 Md. App. 303, 307 (1975)). To succeed on a claim of fraudulent inducement, Plaintiff must demonstrate:

> (1) that the defendant made a false representation to the plaintiff,
> (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth,
> (3) that the misrepresentation was made for the purpose of defrauding the plaintiff,
> (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and
> (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*CapitalSource Fin., LLC v. Delco Oil, Inc.*, 608 F. Supp. 2d 655, 666 (D. Md. 2009) (quoting *Nails v. S & R, Inc.,* 334 Md. 398, 415 (1994)). "Notably, 'fraud cannot be predicated on statements which are merely promissory in nature, or upon expressions as to what will happen in the future.'" *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 612 (D. Md. 2014) (quoting *Sass,* 152 Md. App. at 438)). "In fraudulent inducement cases, a defrauded party may elect

12

between two remedies, which are exclusive[:] . . . to rescind the contract or to ratify the contract and seek damages, either affirmatively or by recoupment." *Id.*

Here, Plaintiff's allegations are, again, insufficient, especially considering the heightened pleading standard under Rule 9(b). Plaintiff has not alleged that she was induced to enter any sort of agreement to her detriment. *See Rozen,* 165 Md. App. at 674, *supra*. She has instead alleged, at most, that she was induced to send her resume to Ms. Catone. (ECF No. 1-1 ¶ 30; ECF No. 10 at p. 11.) Neither of the "exclusive" remedies that exist to redress unlawful fraudulent inducement would have any effect here. *See View Point Med. Sys., LLC*, 9 F. Supp. 3d at 612, *supra*. Even assuming *arguendo* that an agreement exists, Plaintiff still fails to plead the necessary elements of a fraudulent inducement claim. As best the court can tell, the alleged false representations she asserts were that Ms. Catone would provide Plaintiff's resume for consideration for two employment positions and that "neither received [her] resume." (ECF No. 1-1 ¶ 30.) However, Plaintiff does not allege that Ms. Catone never provided her resume to Uber or Zendesk; she alleges that the Chief Privacy Officers for each employer stated either that there was no opening (despite an online job posting) or, most notably, that the position had been filled. *Id.* ¶¶ 7–10. Simply because the employers stated that they did not have an opening or that a position had been filled does not raise a plausible inference that a recruiter sought out Plaintiff's resume either falsely or with reckless indifference to the truth and misrepresented the availability of positions for the purpose of defrauding her. *See McCleary-Evans*, 780 F.3d at 588, *supra*.[11] The court thus finds that Plaintiff has failed to state a claim for fraudulent inducement under Maryland law.

D. **Remaining Allegations**

The court does not discern any additional claims in Plaintiff's Complaint. To the extent

---

[11] Because Plaintiff's claim is facially insufficient, the court need not address Plaintiff's assertion of "intrusion upon privacy" as her compensable injury, but does note that the assertion is again based entirely on speculation.

Plaintiff intended to raise any additional claims or rely on any other allegations to support her claims addressed herein, such allegations fail as impermissible "shotgun pleading."  *See Baxter*, 617 F. Supp. 3d at 351, *supra*; *Lampkin-Asam*, 261 F. App'x at 277, *supra*.  *See also Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

### IV.     CONCLUSION

For the reasons set forth herein, by separate order, Defendants' Motion to Strike Plaintiff's Complaint, or, in the Alternative, Motion to Dismiss (ECF No. 6), construed as a motion to dismiss, will be granted.

May 10, 2024                                                                           /s/_____
                                                                                            Julie R. Rubin
                                                                                            United States District Judge